Paul Conable, OSB No. 975368
  Direct:  503.802.2188
  Email:  paul.conable@tonkon.com
Caroline Harris Crowne, OSB No. 021315
  Direct:  503.802.2056
  Email:  caroline.harris.crowne@tonkon.com
Samantha Taylor, OSB No. 220974
  Direct: 503.802.2042
  Email: samantha.taylor@tonkon.com
TONKON TORP LLP
888 SW Fifth Avenue, 16th Floor
Portland, OR  97204-2099

     Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| CHERI PIKE and CAROLE MACHADO, as Co-Trustees of The Carole A. Machado Revocable Living Trust,<br><br>     Plaintiffs,<br><br>  vs.<br><br>LITTLEJOHN FINANCIAL SERVICES, INC., an Oregon corporation; FRED DAVID LITTLEJOHN II, an individual,<br><br>     Defendants. | Civil No. 6:24-cv-00707-MC<br><br>**AMENDED COMPLAINT**<br><br>Professional Malpractice, Negligence, Breach of Fiduciary Duty (28 U.S.C. § 1332)<br><br>**DEMAND FOR JURY TRIAL** |

     Plaintiffs Cheri Pike and Carole Machado hereby file this Amended Complaint against Defendants alleging as follows:

///

///

PAGE 1 –   **AMENDED COMPLAINT**

## THE PARTIES

1.     Plaintiff Cheri Pike is an individual who resides in and is a citizen of Arizona. Ms. Pike is Co-Trustee of the Carole A. Machado Revocable Living Trust dated January 18, 2017 (the "Machado Trust").

2.     Plaintiff Carole Machado is an individual who resides in and is a citizen of California.  Ms. Machado is Co-Trustee of the Machado Trust.

3.     Defendant Littlejohn Financial Services, Inc. is an Oregon corporation with its principal place of business in Roseburg, Oregon.

4.     Defendant Fred David Littlejohn II is an individual who resides in and is a citizen of Oregon.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because complete diversity exists and the amount in controversy exceeds $75,000.

6.     Venue lies in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTS

7.     Defendants served as investment advisor to the Machado Trust from July 2017 to May 2021.

8.     Defendants' website states: "Being a client of LjFS is more than just paperwork and accounts.  It's special.  LjFS only takes a limited number of clients each year. This is because we take commitments to our clients (our extended family) very seriously."

> We feel strongly that investors should not invest in anything they cannot
> understand. However, investing can be sophisticated and complex at
> times. One of the greatest demonstrations of trust is a client that simply

PAGE 2 –   **AMENDED COMPLAINT**

entrusts their assets to us to "take care of the details" and free themselves to focus on other passions.

9.      Plaintiffs trusted that Defendants were competent and committed to providing quality investment advising services to the Machado Trust.  Furthermore, Plaintiffs trusted Defendants to use their competence and skill to recommend and direct investments in legitimate opportunities.

10.     Pursuant to the terms of an Investment Advisory Agreement dated July 5, 2017 (the "Agreement"), Defendants charged the Machado Trust an annual fee of 0.5% of the value of assets under Defendants' management.  The Machado Trust had around $20 million in assets under Defendants' management, which generated about $100,000 per year in service fees for Defendants.

11.     The Agreement gave Defendants the power and authority to manage and direct the Machado Trust's investments on a discretionary basis.

12.     As fiduciaries, Defendants also had an obligation to exercise due care and adhere to standards of professional competence in service of the client's best interests.

13.     In November 2018, Defendants recommended that the Machado Trust invest more than $1 million with an individual named Kent Limson and Mr. Limson's company, Tacsis LLC ("Tacsis").  The investment was for the benefit of a proposed development project spearheaded by Jackie L. Robinson Jr. (no relation to the historic baseball player) to build a sports arena intended to attract and accommodate a new NBA team on the Las Vegas Strip.

14.     Defendants presented the investment not only as an opportunity, but as a highly lucrative one—conveying, without comment or qualification, Mr. Limson's "guarantee" that the Machado Trust would realize a return of 11% when the investment was redeemed after one year.

///

PAGE 3 –  **AMENDED COMPLAINT**

15.     Defendants also represented to Ms. Pike that Mr. Limson had promised that the investment would be "secured" by a "financial guarantee bond."  Plaintiffs did not know, and Defendants did not explain, that legitimate bonding companies do not generally offer guarantees for repayment of private investments of this kind.

16.     Defendants told Ms. Pike that the guarantor would be Timothy J. Arellano of AGS Assurety LLC ("AGS").  Yet Defendants' only due diligence on AGS consisted in checking that it was registered as a business entity in Nevada.  Even in that limited diligence effort, Defendants apparently failed to notice that AGS had been newly registered as a business on September 19, 2018, just a couple months prior.

17.     Defendants did not request any further information from Mr. Arellano or AGS, such as evidence of their net worth, despite the fact that they were supposedly providing a guarantee on a $1 million loan.

18.     As it turned out, Mr. Arellano and AGS were not licensed to provide insurance or bonding services.  A simple internet search would have shown this in minutes. But Defendants, acting as fiduciaries to the Machado Trust, did not even bother to verify that the supposed guarantor was legitimate.

19.     Defendants also told Ms. Pike that Mr. Limson had claimed that the "bond" from AGS was itself "backed by 100% E&O (errors and omissions) Policy."  No insurance policy was provided to Defendants; if Defendants even requested proof of an insurance policy providing coverage, they did not receive it.  No such policy exists.  Furthermore, legitimate insurance companies do not generally provide "errors and omissions" coverage for defaults by guarantors of private loans.

20.     Beyond the lack of documentation to verify the purported security of the investment, there were also no documents executed to formalize the terms of the Machado

Trust's transfer of its funds to Tacsis.  Remarkably, Defendants never demanded that the investment, and the Machado Trust's right to repayment, be memorialized in any contract.

21.    The only document related to this investment provided to Plaintiffs at the time was a disbursement authorization form, which Ms. Pike signed to effect a wire transfer of $1,079,200 from the Machado Trust to an escrow company in California.

22.    Tacsis used the money from the Machado Trust (as well as from other investors), to provide a series of loans to All Net, LLC ("All Net"), of which Mr. Robinson is the managing member.

23.    Despite the size of the "investment," the Machado Trust did not have a contract with any of the various parties involved.  First, there was no written contract between the Machado Trust and the escrow company.  Instead, escrow instructions were provided by Mr. Limson on behalf of Tacsis (identified as the Lender) and Mr. Robinson on behalf of All Net (identified as the Borrower). Crucially, there was no written contract between the Machado Trust and Tacsis.  Additionally, there was no written contract between the Machado Trust and All Net.

24.    Defendants did receive a copy of a Business Loan & Security Agreement between Tacsis and All Net, with Tacsis identified as the Lender.  The contract references a requirement for All Net to provide "verification of the validity of a financial guarantee bond with sufficient value to cover both the principle [sic] and partial interest of this loan listing [the Machado Trust] as the insured or obligee."  The only other reference to the Machado Trust in the contract appears on the signature page, where there is a block added for "Fiduciary Review and Due Diligence Acknowledgment" with a line for Littlejohn Financial Services to sign as fiduciary for the Machado Trust (which is identified as "obligee/Insured").  However, Defendants apparently never signed this contract.

///

PAGE 5 –  **AMENDED COMPLAINT**

25.    Defendants also received a document titled "Financial Loan Guarantee," supposedly executed by Mr. Arellano and AGS for the benefit of "Tacsis LLC C/O [sic] The Carole Machado Revocable Living Trust." The document recites that it is provided in connection with a "loan contract agreement" between All Net and the Machado Trust. However, no such contract ever existed.

26.    Defendants failed to do even basic due diligence on the recipient of the Machado Trust's funds—the proposed development project led by Mr. Robinson. The dubious history of Mr. Robinson's failed efforts to fundraise for an NBA arena on the Las Vegas Strip have been well-documented for many years. As reported in the press, Mr. Robinson's "27-acre project site has been little more than a giant excavated hole in the ground for years."[1]

27.    In 2013, Mr. Robinson publicly announced that his "All Net Arena and Resort" project finally had the "proper financing in place" after stalling out during the financial crisis; claiming then that the arena was scheduled to be completed in 2016.[2] But by 2016, there had still been no progress.

28.    In 2017, Mr. Robinson claimed to have secured a loan from Credit Suisse. In 2018, Mr. Robinson told the public that his project had received a $3 billion loan from the International Bank of Qatar—the same year that Tacsis made at least seven loans to All Net, with funding secured from small, private investors, including the Machado Trust. In 2019, Mr. Robinson's story changed again. During an appearance before the Clark County

---

[1]    Eli Segall, *Despite 'Serious Concerns,' Long-Delayed Strip Arena, Hotel Plan Survives Vote*, LAS VEGAS REVIEW JOURNAL (Nov. 17, 2022, 11:30 AM), https://www.reviewjournal.com/local/the-strip/despite-serious-concerns-long-delayed-strip-arena-hotel-plan-survives-vote-2678442/.

[2]    Adam Fromal, *Former NBA Player Jackie Robinson Proposes Plan for Las Vegas Arena*, BLEACHER REPORT (Dec. 26, 2013), https://bleacherreport.com/articles/1901762-former-nba-player-jackie-robinson-proposes-plan-for-las-vegas-arena.

PAGE 6 –   **AMENDED COMPLAINT**

Commission that year, Mr. Robinson "described a complex plan involving money in Qatar, people in Zurich, central banks in Europe and the U.S., lines of credit, funds moving from one bank to another and state of Nevada revenue bonds."[3]  After years of shifting stories, Clark County Commissioner Justin Jones stated: "[Mr. Robinson] has come in here with funding sources that are different every single time."[4]

29.    If Mr. Robinson had truly secured institutional-level funding for his project in 2013, or in 2017-18, he would not have been soliciting small, private investments in 2018. The fact is that billion-dollar sports arenas do not get funded through small, private investments.  No one who has ever been involved in Mr. Robinson's NBA arena project has had the ability or the resources to even start construction.

30.    Just as no reputable bank was willing to fund the "All Net Arena and Resort" project over the course of 15 years, no competent investment advisor would have told their client to make a $1,079,200 unsecured investment in a project with such a dubious history. Apparently, Defendants did not even familiarize themselves with easily available information from press reports on the proposed development, much less do any due diligence on what happened with the institutional financing that had reportedly been secured five years earlier. Instead, they blindly recommended that one of their "select," "special," and "extended family" clients invest $1,079,200 in this supposed "opportunity."

31.    Defendants encouraged the Machado Trust to make a risky, unsecured investment based on false information that Defendants passed on to Ms. Pike without first bothering to verify.  Worse still, all of the supposed safeguards and guarantees should have raised red flags for Defendants because they did not comport with standard industry practices and were being touted by individuals and entities without experience or credibility.

---

[3]      *Id.*

[4]      *Id.*

32.     As Defendants should have anticipated, the investment was not redeemed in 2019 as promised.  The Machado Trust only received monthly interest payments in the amount of $9,893.00 from February to August 2019—the six interest payments totaled $59,358.  The Machado Trust has not received a penny since August 2019—Tacsis and Mr. Limson have had no funds from which to pay the Machado Trust because All Net has defaulted on the loans from Tacsis.  As a result, the Machado Trust lost its full $1,079,200 investment, along with the opportunity to earn ordinary returns on its invested funds, and it seems virtually impossible that it will ever recover anything more from any of the various players involved in the All Net arena project.

33.     After All Net defaulted on the loans provided by Tacsis, all attempts to collect the debts have proved unsuccessful.  Tacsis and Mr. Limson ultimately brought a state court action against All Net, AGS, Mr. Robinson, and Mr. Arellano, in Los Angeles, California (Case No. 20STCV41938).  That action was brought on behalf of all of the investors, including the Machado Trust.  However, the litigation has stalled; there has been no meaningful activity for more than a year.  It is questionable whether any defendant will attempt at this stage to defend the case.  Even if Tacsis and Mr. Limson do eventually secure a judgment, there is nothing to suggest that All Net has sufficient assets to satisfy a judgment.

34.     On October 27, 2022, the Machado Trust and Littlejohn Financial Services executed an agreement tolling the statute of limitations on all of the Machado Trust's claims against Defendants.  Plaintiffs have now chosen to pursue those claims to recover damages the Machado Trust suffered as a direct result of Defendants' irresponsible and unreliable investment advice.

**CAUSE OF ACTION 1: MALPRACTICE/PROFESSIONAL NEGLIGENCE**

35.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 34 as set forth above.

36.     As financial advisors, Defendants owed Plaintiff professional duties when advising Plaintiffs on investment opportunities.

37.     Defendants agreed to, and did, render investment advising services to Plaintiffs from 2017 to 2021. In undertaking this engagement, Defendants owed a duty to Plaintiffs to use such skill, prudence, and diligence as other members of its profession commonly possess and exercise under similar circumstances.

38.     In performing their duties, Defendants failed to exercise the reasonable care or competence required of financial advisors performing such services. If Defendants had exercised reasonable care and performed their services in a professionally appropriate manner, they would have conducted adequate due diligence into the Tacsis/All Net Investment and would not have recommended that the Machado Trust invest or transfer $1,079,200 of its assets (without even a contract in place).

39.     Defendants neglected to adequately perform their professional services in violation of their professional duties to Plaintiffs. In particular, Defendants failed to perform a minimal level of due diligence and as a result, recommended a risky and unsecured investment that they did not understand, had done nothing to investigate, or both.

40.     As a result of Defendants' negligent conduct, the Machado Trust has suffered actual damages in an amount to be proven at trial, but not less than $1,079,842 plus the return that the Machado Trust would have earned over the years had its funds been invested prudently. Additionally, by failing to perform even a minimal level of due diligence prior to recommending the investment, Defendants showed a reckless disregard and outrageous indifference to an unreasonable risk of harm and acted with a conscious indifference to the health, safety, and welfare of Plaintiffs. Therefore, Plaintiffs are also entitled to punitive damages in accordance with ORS 31.730.

///

PAGE 9 –  **AMENDED COMPLAINT**

**CAUSE OF ACTION 2: COMMON LAW NEGLIGENCE**

41.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 40 as set forth above.

42.     Defendants had professional duties to perform the services described above with due care and to provide reliable investment recommendations to Plaintiffs.

43.     In performing their duties, Defendants failed to exercise the reasonable care or competence required of financial advisors performing such services.  If Defendants had exercised reasonable care and performed their services in a professionally appropriate manner, they would have conducted adequate due diligence into the Tacsis/All Net Investment and would not have recommended that the Machado Trust invest or transfer $1,079,200 of its assets (without even a contract in place).

44.     Defendants neglected to exercise due care in providing investment advice to Plaintiffs.  In particular, Defendants failed to perform a minimal level of due diligence and as a result, recommended an investment that they did not understand, had done nothing to investigate, or both.

45.     As a result of Defendants' negligent conduct, the Machado Trust has suffered actual damages in an amount to be proven at trial, but not less than $1,079,842 plus the return that the Machado Trust would have earned over the years had its funds been invested prudently.  Additionally, by failing to perform even a minimal level of due diligence prior to recommending the investment, Defendants showed a reckless disregard and outrageous indifference to an unreasonable risk of harm and acted with a conscious indifference to the health, safety, and welfare of Plaintiffs.  Therefore, Plaintiffs are also entitled to punitive damages in accordance with ORS 31.730.

///

///

PAGE 10 – **AMENDED COMPLAINT**

## CAUSE OF ACTION 3: BREACH OF FIDUCIARY DUTY

46.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 as set forth above.

47.     As a financial advisor, Defendants owed a fiduciary duty of care to Plaintiffs. This duty required Defendants to act in Plaintiffs' best interests by providing accurate and reliable investment advice, and only recommending investments that had been vetted through Defendants' reasonable due diligence.

48.     Defendants breached its fiduciary duty of care by failing to perform a minimal level of due diligence and as a result, recommending a risky and unsecured investment that they did not understand, had done nothing to investigate, or both.

49.     As a result of Defendants' conduct, the Machado Trust has suffered actual damages in an amount to be proven at trial, but not less than $1,079,842 plus the return that the Machado Trust would have earned over the years had its funds been invested prudently. Additionally, by failing to perform even a minimal level of due diligence prior to recommending the investment, Defendants showed a reckless disregard and outrageous indifference to an unreasonable risk of harm and acted with a conscious indifference to the health, safety, and welfare of Plaintiffs.  Therefore, Plaintiffs are also entitled to punitive damages in accordance with ORS 31.730.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and order the following relief:

1.     Awarding Plaintiffs actual damages in an amount not less than $1,079,842 plus the return that the Machado Trust would have earned over the years had the funds been invested prudently, and/or pre-judgment interest at the statutory rate, plus post-judgment interest at the statutory rate;

2.      Awarding Plaintiffs punitive damages in accordance with ORS 31.730; and

3.      Awarding Plaintiffs such other relief that the Court deems just, equitable and

appropriate.

### DEMAND FOR JURY TRIAL

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs

demand a trial by jury of all issues triable by jury.

DATED:  June 4, 2024.

TONKON TORP LLP


By    *s/ Paul Conable*
     Paul Conable, OSB No. 975368
      Direct:  503.802.2188
      Email:  paul.conable@tonkon.com
     Caroline Harris Crowne, OSB No. 021315
      Direct:  503.802.2056
      Email:  caroline.harris.crowne@tonkon.com
     Samantha Taylor, OSB No. 220974
      Direct: 503.802.2042
      Email: samantha.taylor@tonkon.com
     TONKON TORP LLP
     888 SW Fifth Avenue, 16th Floor
     Portland, OR  97204-2099

       Attorneys for Plaintiffs

044240\00001\17243926v1

PAGE 12 – **AMENDED COMPLAINT**