Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Brett E. Applegate, OSB No. 132944
bapplegate@swlaw.com
Mackenzie E. L. Wong, OSB No. 214984
melwong@swlaw.com
SNELL & WILMER L.L.P.
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
Telephone: 503.624.6800
Facsimile: 503.624.6888
*Attorneys for Defendants/Third-Party Plaintiffs*
*Littlejohn Financial Services, Inc., and Fred*
*David Littlejohn II*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| CHERI PIKE and CAROLE MACHADO, as Co-Trustees of The Carole A. Machado Revocable Living Trust, | Case No. 6:24-CV-00707-MC |
| Plaintiffs, | **DECLARATION OF FRED DAVID LITTLEJOHN II IN SUPPORT OF THIRD-PARTY PLAINTIFFS' RESPONSE IN OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| LITTLEJOHN FINANCIAL SERVICES, INC., an Oregon corporation; and FRED DAVID LITTLEJOHN II, an individual, | |
| Defendants. | |
| LITTLEJOHN FINANCIAL SERVICES, INC., an Oregon corporation; and FRED DAVID LITTLEJOHN II, an individual, | |
| Third-Party Plaintiffs, | |
| vs. | |
| TACSIS, LLC, a California limited liability company, and KENT LIMSON, an individual. | |
| Third-Party Defendants. | |

DECLARATION OF FRED DAVID LITTLEJOHN II
4880-8146-0969

I, Fred David Littlejohn II, declare as follows:

1.       I am a Defendant/Third-Party Plaintiff in the above-referenced action. I make this declaration based on personal knowledge unless otherwise indicated. If called upon to do so, I would testify truthfully as follows.

2.       I am a Certified Financial Planner, and I am Principal and Chief Executive Officer for Defendant/Third-Party Plaintiff Littlejohn Financial Services, Inc. ("Littlejohn Financial").

3.       At all times described in this declaration, I was a resident of Oregon and Littlejohn Financial was located in Oregon.

4.       To the best of my knowledge, at all times described in this declaration, nonparty Dr. Jon-Marc Weston was a resident of Roseburg, Oregon. I developed a friendship with Dr. Weston when he and I were business partners in a small startup venture from 2006 to 2010. Later, he became Littlejohn Financial's landlord and was, for a time, a client of Littlejohn Financial. Until recently, Dr. Weston had an ophthalmology practice in the same building in Roseburg where Littlejohn Financial has leased office space since around 2012.

5.       In or around November 2018, Dr. Weston visited the offices of Littlejohn Financial. He informed me and my administrative assistant that he was participating in an investment opportunity that might be of interest to my clients. He described the investment opportunity as a bonded private lending deal for a stadium in Las Vegas ("the Stadium Deal"). He encouraged me to contact the loan broker, Third-Party Defendant Kent Limson, and to contact any accredited investors who might be interested in the Stadium Deal.

6.       I did not know it at the time, but I later learned that Dr. Weston's daughter, Christina Weston, was engaged to be married to Mr. Limson. I have also since learned that Mr. Limson later married Ms. Weston. I am informed and believe that Mr. Limson encouraged his future

DECLARATION OF FRED DAVID LITTLEJOHN II - 1
4880-8146-0969

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

father-in-law, Dr. Weston, to promote the Stadium Deal in Oregon, or at a minimum, that Mr. Limson knew that Dr. Weston was doing so.

7.      On November 8, 2018, Dr. Weston forwarded to me an email from Mr. Limson, which attached an NDA signed by Mr. Limson and stated: "Attached is a standard NDA/Non-Circumvention for Dave, as a part of the introduction we would want him to sign so we can freely discuss the terms for the deal and persons involved." A true and correct copy of the email chain and attachment is attached hereto as **Exhibit 1**.

8.      On November 13, 2018, Mr. Limson sent an email directly to my office, with copy to Ms. Weston, containing a link to the NDA. A true and correct copy of the email is attached hereto as **Exhibit 2**.

9.      On or around November 14, 2018, I signed the NDA. A true and correct copy of the signed NDA is attached hereto as **Exhibit 3**.

10.     On November 14, 2018, after I had signed the NDA, Mr. Limson and I spoke by phone about the Stadium Deal, which Mr. Limson explained involved a series of hard-money loans to All-Net, LLC ("All-Net") to provide short-term financing for a project to build an NBA stadium in Las Vegas, Nevada. During that call, Mr. Limson conveyed that he was brokering and underwriting the Stadium Deal and that he had completed extensive due diligence on the deal. Among other things, he told me that he had vetted the deal, secured a bond, and was working closely with the parties.

11.     After our phone call, Mr. Limson sent me an email about the Stadium Deal and Mr. Limson's qualifications. Among other things, the email states: "Unlike traditional lending options through financing brokers, the projects I fund are only for businesses that I have current working relationships with and have extensive due diligence on to ensure leading terms and returns are

DECLARATION OF FRED DAVID LITTLEJOHN II - 2

4880-8146-0969

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

maximized for success." The email attaches a copy of the NDA and states: "If you have investors interested in learning more about the opportunities related to this project, please have them sign the attached NDA and send back to me with their preferred contact information." A true and correct copy of the email and attachment is attached hereto as **Exhibit 4**.

12.      From July 2017 to May 2021, I served as investment advisor to Plaintiff Carole Machado, co-trustee of the Carole A. Machado Revocable Living Trust ("the Machado Trust"), pursuant to a limited engagement defined by an Investment Advisory Agreement. Ms. Machado designated Plaintiff Cheri Pike, co-trustee of the Machado Trust, as her authorized representative. As such, many of my communications went through Ms. Pike.

13.      Ms. Pike had previously told me that she and Ms. Machado were interested in alternatives to the cash in which a portion of the Machado Trust's assets were held. In light of this, I contacted Ms. Pike to inquire whether Plaintiffs were interested in learning more about the Stadium Deal. Ms. Pike said that they were interested.

14.      I informed Mr. Limson that I had a client who was interested in the Stadium Deal, and I asked him to provide me with the due diligence information so that I could provide it to the client to assist them in deciding whether to invest.

15.      In response, Mr. Limson again told me that he had done "extensive" due diligence on the Stadium Deal, and he agreed to provide me with the due diligence information. On or around November 16, 2018, Mr. Limson forwarded me documents containing due diligence information, including a bond letter, a letter certifying assets available to ensure bond liquidity, a certificate of insurance for a secondary E&O insurance policy, an executed loan agreement, and a land lease agreement. Mr. Limson told me to let him know if I had any questions and offered to walk me through the documents. I reviewed the documents, and I forwarded them to Plaintiffs.

DECLARATION OF FRED DAVID LITTLEJOHN II - 3
4880-8146-0969

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

16.     Based on the information I had received and learned from Mr. Limson, I discussed the Stadium Deal with Plaintiffs, including how the deal might align with their overall investment strategy and the amount that they should invest.  I suggested limiting their exposure to not more than 5% of their liquid assets to minimize concentration risk.  Plaintiffs informed me that they had decided to invest around $1,000,000 of the Machado Trust's funds in the Stadium Deal.

17.     I told Mr. Limson that Plaintiffs wanted to invest in the Stadium Deal.  During the course of our conversations, I conveyed to Mr. Limson that Plaintiffs were my clients and that I had discussed the Stadium Deal with them, including the information that Mr. Limson had sent to me about the Stadium Deal.

18.     To the best of my recollection, on at least one occasion prior to the closing of the deal, Mr. Limson had a conference call with me and one or both of the Plaintiffs to discuss the deal.  Additionally, because Plaintiffs were often difficult to reach, on multiple occasions I communicated information from Mr. Limson to Plaintiffs.

19.     On November 19, 2018, Mr. Limson sent me an email with an explanation of the amount of cash required to finalize the deal—$1,079,200.00, which amount included bonding costs and fees, including Mr. Limson's fee of $11,002.00—and a detailed list of "next steps."  The email identified Michelle Marciso as the escrow agent and Susan Jensen Martz as the broker for the deal.  A true and correct copy of the email and attachment is attached hereto as **Exhibit 5**.

20.     On November 21, 2018, Mr. Limson informed me that the borrower, All-Net, had signed the loan agreement.  On that same date, Mr. Limson provided me with wire instructions so that Plaintiffs could wire funds from the Machado Trust to effectuate the investment.

21.     On November 27, 2018, Mr. Limson sent me an email attaching a financial guarantee surety bond and a certificate of insurance for the E&O policy that was to cover the bond.

DECLARATION OF FRED DAVID LITTLEJOHN II - 4
4880-8146-0969

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

In the email, Mr. Limson asked me to facilitate the wire transfer on behalf of the Machado Trust. A true and correct copy of the email and attachments is attached hereto as **Exhibit 6**.

22.    Also on November 27, 2018, I was included on an email from Ms. Martz requesting signatures on an attachment, which included loan documents prepared by Mr. Limson ("the loan documents").  Included on the email were Mr. Limson and Jackie Robinson, the managing member of All-Net.  Throughout the loan documents, there are red X's indicating where initials or signatures are needed, including on the signature page of a document titled "Business Loan and Security Agreement."  The signature page of the "Business Loan and Security Agreement" includes a block for "Fiduciary Review and Due Diligence Acknowledgment," which provides "By signing below, I acknowledge that as the fiduciary responsible for the obligee/Insured The Carole A Machado Revocable Living Trust 1/18/17 (restated 2/27/17) I have read through, understand and accept this agreement" followed by a signature line for "David Littlejohn/Littlejohn financial services" (the "fiduciary review block").  A true and correct copy of Ms. Martz's email and the attached loan documents, including the Business Loan and Security Agreement, is attached hereto as **Exhibit 7**.

23.    The fiduciary review block is not marked with a red X, *id.* at 14, and I do not recall Mr. Limson (or anyone else) pointing it out to me or asking me to agree to it or to sign it.  In fact, I did not agree to it and specifically did not sign it because, as Mr. Limson was well aware, I was not responsible for conducting the due diligence; he was.

24.    On November 28, 2018, Ms. Martz sent me an email attaching a copy of the loan documents that had been signed by Mr. Limson and Mr. Robinson and that included the (unsigned) fiduciary review block.  A true and correct copy of the email and attachment is attached hereto as **Exhibit 8**.

DECLARATION OF FRED DAVID LITTLEJOHN II - 5
4880-8146-0969

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

25.     Also on November 28, 2018, Ms. Pike authorized Schwab to wire $1,079,200.00 from the Machado Trust's Schwab account pursuant to the wire instructions that Mr. Limson had provided. I am informed and believe that Mr. Limson used those funds to effectuate Plaintiffs' investment in the Stadium Deal, which investment is the subject of Plaintiffs' lawsuit against me.

26.     In addition to those described above, I had numerous other calls and emails with Mr. Limson related to the Stadium Deal, including regarding the receipt of interest payments, and later, about the failure of the Stadium Deal to perform as Mr. Limson expected.

I declare under penalty of perjury that the foregoing is true and correct, and that I executed this declaration on October ___4___, 2024, at ___Roseburg___, Oregon.


_Fred David Littlejohn II (signature)_
Fred David Littlejohn II

\4880-8146-0969

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800