IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CHERI PIKE and CAROLE MACHADO,                    Case No. 6:24-cv-00707-MC
*as Co-Trustees of the Carole A. Machado*
*Revocable Living Trust*,                          OPINION AND ORDER

        Plaintiffs,

    v.

LITTLEJOHN FINANCIAL SERVICES, INC.,
*an Oregon Corporation,* and FRED DAVID
LITTLEJOHN II, *an individual*,

        Defendants.

LITTLEJOHN FINANCIAL SERVICES, INC.,
*an Oregon Corporation,* and FRED DAVID
LITTLEJOHN II, *an individual*,

        Third-Party Plaintiffs,

    v.

TACSIS APC, *a California professional stock
corporation*, TACSIS, LLC, *a California limited
liability company*, and KENT LIMSON, *an individual*,

        Third-Party Defendants.

_____

MCSHANE, Judge:

    Plaintiffs Cheri Pike and Carole Machado ("Plaintiffs") filed this action against

Defendants Littlejohn Financial Services, Inc., and Fred David Littlejohn II (together,

"Littlejohn") for claims arising out of a failed investment opportunity. *See* Pls.' Am. Compl.,

ECF No. 9. Littlejohn then filed a Third-Party Complaint ("TPC") against Third-Party

Defendants Tacsis APC, Tacsis, LLC, and Kent Limson (collectively, "Tacsis"), seeking

indemnification and contribution. *See* TPC, ECF No. 17.

Before the Court is Tacsis' Motion to Dismiss the TPC for lack of personal jurisdiction.[1]

Tacsis' Mot., ECF No. 27. The Motion is GRANTED for the reasons stated below.

## LEGAL STANDARD

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v.

Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Before discovery and in the absence

of an evidentiary hearing, as here, the plaintiff need only make 'a prima facie showing of

jurisdictional facts to withstand the motion to dismiss.'" *Burri L. PA v. Skurla*, 35 F.4th 1207,

1213 (9th Cir. 2022). The plaintiff cannot "simply rest on the bare allegations of its complaint."

*Schwarzenegger*, 374 F.3d at 800. However, any uncontroverted allegations are taken as true and

conflicts over statements contained in affidavits are resolved in the plaintiff's favor. *Id.*

## BACKGROUND

### I.     Factual Background

Original Plaintiffs are Cheri Pike and Carole Machado, residents of Arizona and

California and co-trustees of the Carole A. Machado Revocable Living Trust ("the Trust"). Am.

Compl. ¶¶ 1–2. From July 2017 to May 2021, Plaintiffs hired Littlejohn Financial Services, an

Oregon corporation lead by principal and CEO Fred David Littlejohn II, to serve as an

investment advisor to the Trust. *Id.* at ¶¶ 3–4, 7; *see also* Littlejohn Decl. ¶ 2, ECF No. 35. Under

the terms of their agreement, Littlejohn charged an annual fee of .5% of the Trust's assets in

---

[1] The Motion raises alternative arguments in favor of dismissal. The Court does not reach them in this Opinion.

exchange for the fiduciary power and authority to manage the Trust's investments on a discretionary basis. Am. Compl. ¶¶ 10–11.

In approximately November 2018, non-party Dr. Jon-Marc Weston visited the Littlejohn offices and shared an investment opportunity that he was participating in. Littlejohn Decl. ¶ 5. Dr. Weston and Mr. Littlejohn had previously developed a friendship during a joint business venture in 2006. *Id.* at ¶ 4. Since that time, Dr. Weston has been Littlejohn's business partner, landlord, office neighbor, and client. *Id.* On the day of his visit, Dr. Weston "described the investment opportunity as a bonded private lending deal for a stadium in Las Vegas" ("the Deal") and he "encouraged [Mr. Littlejohn] to contact the loan broker, Third-Party Defendant Kent Limson." *Id.* at ¶ 5. Mr. Limson is a California resident and the managing member of Third-Party Defendant Tacsis, a California limited liability company. TPC ¶¶ 5–6. Mr. Limson is also Dr. Weston's son-in-law. Limson Decl. ¶ 2, ECF No. 37.

Following his visit, Dr. Weston sent Mr. Littlejohn an email instructing him to "[l]et Kent know if [Littlejohn is] interested in more info." Littlejohn Decl. ¶ 7; Ex. 1. He also forwarded an NDA signed by Mr. Limson "as a part of the introduction . . . so [they] can freely discuss the terms for the deal and persons involved." *Id.*

Five days later, Mr. Limson himself sent Mrs. Weston and the Littlejohn offices an email containing a link to the NDA and asking to "have David sign and send back prior to [their] call tomorrow at 10am [sic]." Littlejohn Decl. ¶ 8; Ex. 2.

Mr. Littlejohn signed the NDA prior to his phone call with Mr. Limson on November 14. Littlejohn Decl. ¶¶ 9–10; Ex. 3. After their call, Mr. Limson sent Mr. Littlejohn a follow-up email providing more financing information and the following assurances:

> I have 14 years of experience in the financial consulting and
> accounting industry. As a CPA & MBA, I serve companies in

> interim CFO and controller capacities. My unique role at these
> companies positions me to structure investment opportunities that
> benefit both the borrower and lender. Unlike traditional lending
> options through financing brokers, the projects I fund are only for
> businesses that I have current working relationships with and have
> extensive due diligence on to ensure leading [sic] terms and returns
> are maximized for success.

Littlejohn Decl. ¶ 11; *see also* Limson Decl. Ex. 1. Approximately one hour later, Mr. Littlejohn

responded with the following:

> Hi Kent –
> I've had an opportunity to speak with some clients. One in
> particular may be interested in a $1,000,000 block of the stadium
> financing deal.
> Any other due diligence information you could provide to me
> would be useful. I will be performing the background work. It
> sounds like the client would be basing their decision primarily off
> of my recommendation (yikes?).
> Thanks – I look forward to digging in on this one.
> David

Limson Decl. Ex. 1; *see also* Littlejohn Decl. ¶¶ 13–14; Am. Compl. ¶¶ 13–14.

The next day, Mr. Limson emailed Mr. Littlejohn a Dropbox link that contained the due

diligence documents, "including a bond letter, a letter certifying assets available to ensure bond

liquidity, a certificate of insurance for a secondary [Errors & Omissions] insurance policy, an

executed loan agreement, and a land lease agreement." Limson Decl. Ex. 1; Littlejohn Decl. ¶

15. Mr. Littlejohn forwarded the information to Plaintiffs and discussed with them "how the deal

might align with their overall investment strategy and the amount that they should invest."

Littlejohn Decl. ¶ 16.

On November 19, after some conversation between the parties, Mr. Limson sent Mr.

Littlejohn a final email containing payment calculations and next steps. *Id.* at ¶¶ 17–19; Ex. 5.

On November 21, Mr. Limson told Mr. Littlejohn that All-Net LLC and its managing member, Jackie Robinson, (together, "the Borrower") had signed the loan agreement. *Id.* at ¶ 20.

On November 27, Mr. Limson sent Mr. Littlejohn an email with the financial guarantee surety bond and a certificate of insurance for the Errors and Omissions policy, acknowledged by Tacsis, signed by the Borrower, and signed by the guarantor, Timothy Arellano of AGS Assurety LLC ("the Guarantor"). *Id.* at ¶ 21; Ex. 6.

Also on November 27, Sue Martz, a California broker with Riviera Mortgage Group, sent Mr. Littlejohn, Mr. Limson, and the Borrower an email requesting signatures on the loan documents prepared by Tacsis. *Id.* at ¶ 22; Ex. 7. She re-sent the documents the next evening, after Mr. Limson and the Borrower had completed their signatures. *Id.* at ¶ 24; Ex. 8. The Business Loan and Security Agreement ("the Agreement"), included in both emails to Mr. Littlejohn, contained a signature page with one signature block dedicated to the "Fiduciary Review and Due Diligence Acknowledgement." *Id.* It provided: "By signing below, I acknowledge that as the fiduciary responsible for the obligee/insured The Carole A Machado Revocable Living Trust 1/18/17 (restated 2/27/17) I have read through, understand, and accept this agreement." *Id.* The name printed was "David Littlejohn/Littlejohn financial services." *Id.* Mr. Littlejohn did not sign it. According to his Declaration, "[t]he fiduciary review block is not marked with a red X" and he "do[es] not recall Mr. Limson (or anyone else) pointing it out to [him] or asking [him] to agree to it or to sign it. In fact, [he] did not agree to it and specifically did not sign it because, as Mr. Limson was well aware, [Mr. Littlejohn] was not responsible for conducting the due diligence; [Mr. Limson] was." Littlejohn Decl. ¶ 23.

That day, Plaintiffs wired $1,079,200.00 of the Trust's funds to Mr. Limson's escrow account in California. *Id.* at ¶ 25; Am. Compl. ¶ 21.

## II.    <u>Procedural Background</u>

The Deal ultimately failed, and the Trust lost its investment. *See generally* Am. Compl. ¶¶ 26–32. The Borrower defaulted on the loan, and the Guarantor was not actually licensed to provide insurance or bonding services. *Id.* at ¶ 18. Tacsis brought a California state court action against the Borrower and Guarantor on behalf of the Trust and investors, but that action has apparently stalled. *Id.* at ¶ 33.

Having previously executed an agreement to toll all claims the Trust may have against Littlejohn, Plaintiffs decided to pursue those claims on April 25, 2024, by filing this action against Littlejohn for malpractice/professional negligence, common law negligence, and breach of fiduciary duty. *Id.* at ¶¶ 34, 35–49.

Littlejohn, in turn, filed their TPC against Tacsis, seeking indemnification and contribution. TPC ¶¶ 28–33. Littlejohn claims that their liability is coextensive with Tacsis' because Tacsis "had represented that they were underwriting the investment and conducting all due diligence." *Id.* at ¶ 24. According to the TPC, "[Tacsis] did not provide [the Agreement] to [Littlejohn], and [Littlejohn] neither consented to nor signed the fiduciary review block. In fact, [Littlejohn] did not see [the Agreement] until after Plaintiffs sued them." *Id.* at ¶ 23.

## <u>ISSUE</u>

Tacsis now moves to dismiss the TPC. The instant question is whether this federal court sitting in Oregon can exercise personal jurisdiction over the Tacsis defendants who reside in California. The Court concludes it cannot.

## DISCUSSION

Due process[2] requires a non-resident defendant to have sufficient "minimum contacts" with the forum state, such that the exercise of personal jurisdiction would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and quotation marks omitted). Minimum contacts may be established through a showing of either general or specific jurisdiction. *E.g.*, *Schwarzenegger*, 374 F.3d at 801. Here, Littlejohn argues the Court has specific personal jurisdiction over Tacsis. [3]

## I.    Specific Personal Jurisdiction

Specific jurisdiction covers defendants "less intimately connected" with the forum state. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161 (9th Cir. 2023) (quoting *Int'l Shoe*, 326 U.S. at 316). This type of jurisdiction is accordingly "case-linked," reaching only a "narrower class of claims." *Id.* The relevant inquiry focuses on the relationship between the defendant, the forum, and the litigation. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)). "Specifically, 'the defendant's suit-related conduct must create a substantial connection with the forum State.'" *Id.* The following three-part test determines whether a defendant has sufficient contacts with the forum state to be subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

---

[2] "An exercise of personal jurisdiction in federal court must comport with both the applicable state's long-arm statute and the federal Due Process Clause." *Burri L. PA v. Skurla*, 35 F.4th 1207, 1212 (9th Cir. 2022). Because Oregon authorizes personal jurisdiction to the extent permitted by the Due Process Clause of the U.S. Constitution, the two requirements collapse into one. *See* Or. R. Civ. P. 4L.

[3] "The Littlejohn Parties do not dispute that the Tacsis Parties are not subject to general personal jurisdiction." Littlejohn's Resp. 10., ECF No. 34.

(2) the claim must be one which arises out of or relates to the
defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and
substantial justice, i.e. it must be reasonable.

*E.g.*, *Davis*, 71 F.4th at 1161–62. The plaintiff bears the burden of establishing the first two

prongs, after which it shifts to the defendant to "present a compelling case" that the exercise of

jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

### a. **First Prong**

Under the first prong, Littlejohn has the burden of establishing that Tacsis "performed

some act or consummated some transaction within the forum or otherwise purposefully availed

[themselves] of the privileges of conducting activities in the forum." *See Pebble Beach Co. v.

Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (original citations omitted). This prong may be

satisfied by showing either purposeful availment or purposeful direction.[4] *E.g.*, *In re W. States

Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 743 (9th Cir. 2013).

### i. **Purposeful Availment**

"Evidence of availment is typically action taking place in the forum that invokes the

benefits and protections of the laws in the forum." *Pebble Beach*, 453 F.3d at 1155. Alone, a

contract "does not automatically establish minimum contacts in plaintiff's home forum." *Picot v.*

---

[4] While the first prong encompasses both "purposeful availment" and "purposeful direction," they are distinct concepts. *Davis*, 71 F.4th at 1162. Historically, some courts have applied the "availment" analysis to contract claims, and the "direction" analysis to torts. *See Schwarzenegger*, 374 F.3d at 802. Littlejohn focuses their analysis on purposeful direction, arguing that "this case is more akin to one 'sounding in tort.'" Resp. 12–13. But as Littlejohn is aware, the Ninth Circuit has clarified that there is no "rigid dividing line between these two types of claims." *Davis*, 71 F.4th at 1162. "Both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Accordingly, "when considering specific jurisdiction, courts should comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiffs' claims—which may mean looking at both purposeful availment and purposeful direction." *Id.* (citations omitted).

*Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008)). "[T]here must be 'actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (quoting *Burger King*, 471 U.S. at 475). Prior negotiations, contemplated future consequences, contract terms, and the parties' actual course of dealing may be considered but the "defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Id.* (quotations omitted).

Littlejohn's brief fails to identify any conduct by Tacsis in Oregon that supports the availment concept. Mr. Limson never visited Oregon and Tacsis neither has offices nor conducts business in Oregon. Similarly, the Court finds no actions by Tacsis' that invoke the benefits or protections of Oregon's laws. The only pertinent conduct Littlejohn can point to is that Tacsis briefly negotiated through Littlejohn to obtain Plaintiffs' investment. The Agreement envisioned Littlejohn acting as fiduciary for Plaintiffs' investment, but Littlejohn never signed it. Beyond that, the terms, execution, and performance of the Deal occurred outside of Oregon. That is not sufficient to conclude that Tacsis purposefully availed themselves of the privilege of doing business in Oregon.

### ii.  Purposeful Direction

"Evidence of direction generally consists of action taking place outside the forum that is directed at the forum." *Pebble Beach*, 453 F.3d at 1155. It is evaluated under a three-part "effects" test. *See Calder v. Jones*, 465 U.S. 783, 789–90 (1984). The defendant must have allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *E.g.*, *Davis*, 71 F.4th at 1162–63. Consistent with due process, the "analysis is driven by the defendant's contacts with the forum state—not the plaintiff's or other parties' forum connections." *Id.* at 1163.

Accordingly, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Although "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," the "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286.

Here, Littlejohn alleges Tacsis engaged in the following intentional acts expressly aimed at Oregon: initiating contact through Dr. Weston, encouraging Dr. Weston to promote the Deal, advocating for the Deal and Mr. Limson's qualifications, and sending communications, as well as documents, to Mr. Littlejohn. Resp., 14–15.

As a preliminary matter, the Court is unconvinced that Tacsis intentionally sent Dr. Weston as their agent to promote the Deal.[5] Although Mr. Littlejohn and Mr. Limson's affidavits conflict regarding Dr. Weston's motivation, the record makes clear that it was Dr. Weston, a long-time friend and business comrade of Mr. Littlejohn, who visited the Littlejohn offices with an investment opportunity that he himself was participating in. In a subsequent email, it was again Dr. Weston who told Mr. Littlejohn to reach out to Mr. Limson if he was interested. Based on that, Mr. Littlejohn signed an NDA intending to learn more information from Mr. Limson. There is nothing to support Littlejohn's theory that Tacsis intentionally utilized Dr. Weston to endorse the Deal. However, even assuming Littlejohn's characterization of the events, it is "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts.'" *Walden*, 571 U.S. at 286.

---

[5] Littlejohn's Declaration contends "Mr. Limson encouraged his future father-in-law, Dr. Weston, to promote the Stadium Deal in Oregon, or at a minimum, that Mr. Limson knew that Dr. Weston was doing so." Littlejohn Decl. ¶ 6. Mr. Limson claims this manufactured promotion is false. That "[w]hile he did discuss the Stadium Project with Dr. Weston, [he] in no way instructed or encouraged Dr. Weston to pitch and/or discuss the Stadium Project to Mr. Littlejohn or anyone else." Limson Decl. ¶ 4. Rather, Mr. Limson "spoke about the Stadium Project as a matter of daily family talk, as [he] was about to marry [Dr. Weston's] daughter, Christina, who had traveled with [Mr. Limson] to the Stadium Project site on several occasions." *Id.* at ¶ 8.

Tacsis' reliance on a non-party to introduce an investment to Littlejohn would be too attenuated a chain of events to support specific jurisdiction. Moreover, it rings inconsistent with the foundational requirement that the jurisdictional inquiry be driven by the *defendant's* contacts with the forum state.

As to the remaining alleged intentional acts—generally, all communications Tacsis sent to Littlejohn—Littlejohn has failed to establish that those acts were "expressly aimed at the forum state." Frankly, they were barely aimed at Littlejohn. The correspondence reflects Tacsis responding to Littlejohn's interest in promoting the Deal to his clients. Based on those acts, the sole link between Tacsis and this forum is Littlejohn. That is not sufficient to confer specific jurisdiction over Tacsis. Further it is "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" that satisfy the inquiry. *See Walden*, 571 U.S. at 285.

For the same reasons, Littlejohn fails to demonstrate the final element of the *Calder* "effects" test: that Tacsis caused a harm they knew would likely be suffered in Oregon.

Because Littlejohn has failed to demonstrate that Tacsis either purposefully availed themselves of the privileges of conducting business in this forum or purposefully directed actions at this forum, the first prong of the "minimum contacts" cannot be met.

### b.  Second and Third Prongs

"[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." *Boschetto*, 539 F.3d at 1016. The Court need not address the remaining two prongs.

## <u>CONCLUSION</u>

Littlejohn has failed to establish that Tacsis has minimum contacts with this forum sufficient to subject them to personal jurisdiction here. Tacsis' Motion to Dismiss, ECF No. 27, is therefore GRANTED.

IT IS SO ORDERED.

DATED this 17th day of December 2024.


      s/Michael J. McShane
      Michael J. McShane
      United States District Judge